### NAGY v. INTERNATIONAL CORK CO.

(District Court, E. D. New York. June 20, 1921.)

1. Patents ⊚⇒328—1,063,720, for crown cork assembling machine, claim 1, held valid, but not infringed.

The Nagy patent, No. 1,063,720, for crown cork assembling machine, claim 1, *held* valid and not infringed.

2. Patents ⊚⇒328—1,419,583, for feeding attachment for cork-assembling machines, held valid, except claim 1, but not infringed.

The Nagy patent, No. 1,419,583, for feeding attachment for crown cork assembling machines, claim 1, *held* void for anticipation by patent No. 1,063,720, to the same inventor. Claims 3, 4, 5, 6, and 7 *held* valid, but not infringed.

3. Patents ⊚⇒66—Patent may be anticipated by prior invention of patentee.

That an anticipating patent was granted to the same patentee does not avoid anticipation.

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Patents ⊜⟶246—Omission of element of combination avoids infringement.**

A patent for a combination is not infringed by a structure from which one element of the combination is omitted.

In Equity. Suit by Berthold Nagy against the International Cork Company. Decree for defendant.

M. Milton Gewertz, of Brooklyn, N. Y. (Gustave R. Thompson, of New York City, of counsel), for plaintiff.

Newell & Spencer, of New York City (Emerson R. Newell, of New York City, of counsel), for defendant.

CAMPBELL, District Judge. This is a suit for infringement of patent No. 1,063,720, issued by the United States Patent Office to the plaintiff herein, dated June 3, 1913, and patent No. 1,419,583, issued by the United States Patent Office to the plaintiff, dated June 13, 1922. The answer is invalidity and noninfringement.

[1, 2] Plaintiff bases this suit on claim 1 of patent No. 1,063,720, which reads as follows:

"1. In a device of the character described, the combination with a hopper adapted to receive a mass of sealing disks of cork or the like having a discharge opening and an inclined passage leading to said opening, of a chute communicating with said passage, the bottom of said passage and said chute being formed by a movable plate, means for imparting a shaking motion to said plate, a drum mounted above and in alignment with said passage, and a plurality of springs on said drum, said springs serving to permit only those disks to enter said chute which slide on one of their faces in said passage toward said chute and at the same time to agitate the mass of disks in said hopper,"

and claims 1, 3, 4, 5, 6 and 7 of patent No. 1,419,583, which read as follows:

"1. A feeding attachment for crown cork assembling machines embodying therein a hopper adapted to receive cork disks in bulk and having an open bottom adapted to permit a mass of cork to simultaneously pass therethrough, a vertically extending chute, the lower end of which terminates adjacent the cork disk feeding mechanism of an assembling machine, a plate mounted below the open bottom of said hopper and having an outlet opening therethrough adapted to permit disks to pass into the open top of said chute, said plate extending on an incline from adjacent said chute to adjacent said hopper, whereby cork disks have a tendency to move along said plate by gravity from adjacent said hopper to adjacent said outlet opening, means imparting continuous vibratory movement to said plate in the direction of the feeding movement of the disks thereon from said hopper to said chute, whereby disks thereon will be kept in continuous motion and will be caused to progress flatwise thereupon, and confining means adjacent said outlet opening, whereby disks will be successively directed therethrough into said chute."

"3. A feeding attachment for crown cork making machines embodying therein a frame, an open bottom hopper supported thereby, a cross-bar having an opening therethrough, a chute, one open end of which communicates with the opening in said cross-bar and the other open end of which terminates adjacent the cork disk feeding mechanism of an assembling machine, ways upon said frame inclined from adjacent said cross-bar toward said hopper, a movable plate mounted upon said ways below, and spaced away from, the bottom of said hopper, and having an outlet opening therethrough adjacent the opening in said cross-bar, means adjacent

said opening confining the disks upon said plate, and means imparting continuous vibratory movement to said plate, whereby the disks discharged from the hopper upon said plate, will be constantly agitated and advanced upon said plate until discharged through the outlet opening thereof into said chute.

"4. A feeding attachment for crown cork making machines embodying therein a frame, an open bottom hopper supported thereby, a cross-bar having an opening therethrough, a chute, one open end of which communicates with the opening in said cross-bar and the other open end of which terminates adjacent the cork disk feeding mechanism of an assembling machine, ways upon said frame inclined from adjacent said cross-bar toward said hopper, a movable plate mounted upon said ways below, and spaced away from, the bottom of said hopper, and having an outlet opening therethrough adjacent the opening in said cross-bar, a casing inclosing a portion of said plate and confining disks thereupon about said outlet opening, said casing being carried by and movable with said plate, and means imparting continuous vibratory movement to said plate, whereby the disks discharged from the hopper upon said plate, will be constantly agitated and advanced upon said plate until discharged through the outlet opening thereof into said chute.

"5. A feeding attachment for crown cork making machines embodying therein a frame, an open bottom hopper supported thereby, a cross-bar having an opening therethrough, a chute, one open end of which communicates with the opening in said cross-bar and the other open end of which terminates adjacent the cork disk feeding mechanism of an assembling machine, ways upon said frame inclined from adjacent said cross-bar toward said hopper, a movable plate mounted upon said ways below, and spaced away from, the bottom of said hopper, and having an outlet opening therethrough adjacent the opening in said cross-bar, a casing inclosing a portion of said plate and confining disks thereupon about said outlet opening, said casing being carried by and movable with said plate, said casing comprising a side wall, portions of which converge toward said outlet opening and a top, the edge of which adjacent said hopper extends obliquely to the line of movement of said plate and is spaced away from said plate less than the diameter of a disk, and means imparting continuous vibratory movement to said plate, whereby the disks discharged from the hopper upon said plate, will be constantly agitated and advanced upon said plate until discharged through the outlet opening thereof into said chute.

"6. A feeding attachment for crown cork making machines embodying therein an open bottom hopper, a movable plate mounted below the discharge of said hopper and having an elliptical outlet opening therethrough, a chute, one open end of which terminates adjacent the outlet opening in said plate, and the other open end of which terminates adjacent the cork disk feeding mechanism of an assembling machine, said plate being spaced away from the discharge of said hopper a progressively increasing distance toward said chute, means adjacent said outlet opening confining the disks upon said plate, and means imparting continuous vibratory movement to said plate, in the direction of the feeding movement of the disks thereon from said hopper to said chute, whereby the disks discharged from the hopper upon said plate, will be constantly agitated and advanced upon said plate until discharged through the outlet opening thereof into said chute.

"7. A feeding attachment for crown cork making machines embodying therein a frame, an open bottom hopper supported thereby, a cross-bar having a tapering opening therethrough, a chute, one open end of which communicates with the opening in said cross-bar and the other open end of which terminates adjacent the cork disk feeding mechanism of an assembling machine, ways upon said frame inclined from adjacent said cross-bar toward said hopper, a movable plate mounted upon said ways below, and spaced away from, the bottom of said hopper, and having an elliptical outlet opening therethrough adjacent the opening in said cross-bar, a casing inclosing a portion of said plate and confining disks thereupon about said outlet opening, said casing being carried by and movable with said plate, an elliptical throat carried by said plate having converging sides

290 F.—15

leading from said outlet opening and constantly communicating with said opening in said cross-bar, and means imparting continuous vibratory movement to said plate, whereby the disks discharged from the hopper upon said plate, will be constantly agitated and advanced upon said plate until discharged through the outlet opening thereof into said chute."

The essential elements of claim 1 of the patent in suit, No. 1,063,-720 (Plaintiff's Exhibit 1), which is for a combination, are the hopper, *10*, with an open bottom, a rotating drum or wheel, *35*, provided with springs, *36*, which form part of the bottom of the hopper, the plate, *15*, which closes the bottom of the hopper and also forms the bottom of a narrow passage, the rail, *17*, which at the lower end of the plate forms the passage and by which the disks are confined to the plate and directed to the chute or tube and on which plate the disks rest, the upper end of this plate, as shown in Fig. 1, is firmly attached by screws, *16*, to the hopper portion, *13*, the lower end is loosely held, the cam, *25*, by the rotation of which this plate can be jiggled up and down causing the disks to slide down the plate, the chute or tube, *19*, into which the disks fall, passing from thence to the assembling machine. The purpose of the wheel, *35*, with springs, *36*, which is kept in continual rotation, is to prevent any disk from passing unless it lies flat on the plate, *15*.

A modification is shown in Fig. 4, by which the plate, *15*, is reciprocated longitudinally of itself in an inclined plane, between the guides or ways, *13* and *42*, by a link mechanism, *43*, *47*, and *49*, attached to the wheel, *45*. This modification provides for the sliding plate which may be substituted for the jiggling or vertically vibrating plate shown in Fig. 1, the construction and operation being otherwise identical with the device shown in Figs. 1 to 3, inclusive, of the drawings.

The essential elements of the second patent in suit, No. 1,419,583 (Plaintiff's Exhibit 2), are the hopper, *a*, the plate, *e*, the guides or ways, *b*, the chute, *d*, and the means for imparting reciprocatory movement, *h*. The plate in this patent also has a cage about it, *f*, and the opening, *g*, through which the disks fall into the tube, is not round but elliptical, and was made elliptical for a definite purpose, the elliptical shape being of distinct advantage over the round shape (Plaintiff's Exhibit 2, lines 60–64) :

"By using an elliptical throat, *g*, the discharge opening $e^1$ of the plate *e* is in continuous communication with the inlet of the chute *d* so as to permit disks to drop continuously from the plate *e* into said chute."

As to claim 1 of the second patent in suit (Plaintiff's Exhibit 2), I am of the opinion that it is anticipated by the prior patent in suit (Plaintiff's Exhibit 1) in its Fig. 4 modification, because when the sliding plate is substituted for the jiggling plate, it discloses all of the combination of claim 1 of the second patent in suit (Plaintiff's Exhibit 2), the parts of claim 1 of the second patent in suit (Plaintiff's Exhibit 2) being designated by name, and the corresponding parts of the prior patent in suit (Plaintiff's Exhibit 1) being designated by number, viz. the hopper, *10*, chute, *19*, *21*, plate, *15*, Fig. 4, means, *45–49*, Fig. 4, imparting continuous vibratory movement

to said plate in the direction of the feeding movement of the disks thereon, and confining means adjacent said outlet opening whereby the disks will be successively directed therethrough into said chute, *17*, and is not valid.

See section 4886, R. S. (Comp. St. § 9430), so much of which as is necessary for consideration in the instant case reads as follows:

"Any person who has invented or discovered any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvements thereof, not known or used by others in this country, before his invention or discovery thereof, and not patented or described in any printed publication in this or any foreign country, before his invention or discovery thereof, or more than two years prior to his application, * * * may, * * * obtain a patent therefor."

[3] The fact that the plaintiff himself was the prior patentee does not avoid such anticipation. James v. Campbell, 104 U. S. 356, 26 L. Ed. 786.

[4] Each of the claims of the two patents on which this suit is based is a combination of elements, and therefore if one element or part of that combination is omitted in defendant's device or machine, the same does not infringe such claim. Motion Picture Co. v. Universal Film Co., 243 U. S. 510, 37 Sup. Ct. 416, 61 L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959.

The defendant's machine (Defendant's Exhibit A) has a hopper, *13*, a pan, *18*, which carries attached to it a tube or chute, *30*, and a portion, *21*, which is a guide. The portions *18*, *30*, and *21* are all moved back and forth in a horizontal plane and not in an inclined plane. The moving portions rest on the guides or ways, *23*, which are horizontal and not inclined. There is an opening from the pan, *18*, to the chute or tube, *30*, but this opening is round and not elliptical.

It has no drum or rotating wheel such as is shown in the plaintiff's first patent in suit (Plaintiff's Exhibit 1). In order to infringe claim 1 of the plaintiff's first patent in suit (Plaintiff's Exhibit 1), one of the elements which must be present in defendant's machine is:

"A drum *(35)* mounted above and in alignment with said passage *(14)*, and a plurality of springs *(36)* on said drum."

Defendant's device has no such "drum," nor any such drum provided with springs, therefore it does not infringe claim 1 of plaintiff's first patent in suit (Plaintiff's Exhibit 1), and that is the only claim of that patent which forms a basis for this suit.

I have found that claim 1 of plaintiff's second patent in suit (Plaintiff's Exhibit 2) is anticipated by claim 1 of plaintiff's first patent in suit (Plaintiff's Exhibit 1); but if it were not so anticipated, in my opinion the defendant's machine would not infringe, because one of the elements of the combination in claim 1 of plaintiff's second patent in suit (Plaintiff's Exhibit 2) is "means imparting continuous vibratory movement to said plate in the direction of the feeding movement of the disks thereon," and in that patent the plate is inclined and the disks slide in an inclined direction, that being the direction of the feeding movement; whereas, in the defendant's device, the

vibratory movement imparted to its pan, *18,* is in a horizontal direction and not in an inclined direction.

Each of the claims 3, 4, 5, and 7 of plaintiff's second patent in suit (Plaintiff's Exhibit 2) call for "ways upon said frame inclined from adjacent said cross-bar toward said hopper," together with "a movable plate mounted upon said ways." These ways support, guide and direct the plate in its inclined sliding movement, because it is desired that the plate shall be slid back and forth on an angle to the horizontal. This is not true of the defendant's device because the moving parts in the defendant's device move in a horizontal direction only, and the element of plaintiff's said claims 3, 4, 5, and 7 "ways upon said frame inclined, * * *" is therefore not found in defendant's device and consequently it does not infringe any of these claims. The defendant's device does not have the "cross-bar" or "tapering opening therethrough," also called for by said claims 3, 4, 5, and 7.

Claim 6 of the plaintiff's second patent in suit (Plaintiff's Exhibit 2) calls for "a movable plate mounted below the discharge of said hopper and having an elliptical outlet opening therethrough" into the chute or tube, and plaintiff admits that the elliptical opening is of special importance over a round opening, and it therefore is an important element of the combination set forth in that claim. No elliptical outlet is found in the defendant's device; on the contrary, the defendant's device has a circular outlet, and its device, therefore, does not offend.

From a consideration of the evidence, I am of the opinion that the defendant has acted in good faith and that the device it is now using was designed and at least one built in November or December, 1917, and that some 25 of them were running in defendant's factory before Mr. Herzog and Mr. Alberti accepted the invitation of the plaintiff to see the latter's machine in the New Process Cork Company's factory, at which time plaintiff's patent had not been issued. The defendant, in building its machines, followed the prior art, as it had a perfect right to do: British patent No. 220, issued to George Kynoch et al., dated January 4, 1894 (Defendant's Exhibit C). Patent No. 274,221, issued by United States Patent Office to C. Pfannenstiehl, dated March 20, 1883 (Defendant's Exhibit D). Patent No. 944,364, issued by United States Patent Office to H. D. Hodge, dated December 28, 1909 (Defendant's Exhibit E). In my consideration of the evidence in the instant suit, I have entirely disregarded the Bogdanffy drawing (Defendant's Exhibit B), as I do not think it can be considered as showing prior art, or in any way affecting the validity of the plaintiff's patents in suit, or limiting the claims thereof.

Some point was made of the defendant's offer of settlement as to the terms of which there was much dispute, but inasmuch as the offer was not accepted, it is not controlling on the legal question here presented, because any one might well be willing to buy his peace on the terms testified to by defendant's witness, even although he had a perfectly good defense, as I find defendant has in this suit.

I therefore find that claim 1 of the plaintiff's first patent in suit, No. 1,063,720, as hereinbefore construed, is valid; that claim 1 of plaintiff's second patent in suit, No. 1,419,583, is invalid; that claims 3, 4, 5, 6, and 7 of plaintiff's second patent in suit, No. 1,419,583, as hereinbefore construed, are valid; and that the defendant does not infringe any of the claims of the patents in suit on which this suit is based.

A decree may be entered, dismissing the plaintiff's bill of complaint, with costs.